**TRISTAR LODGING, INC., Plaintiff,**

v.

**ARCH SPECIALITY INSURANCE COMPANY, Defendant.**

**No. 6:05–CV–98–ORL–DAB.**

United States District Court, M.D. Florida, Orlando Division.

June 1, 2006.

Order Denying Reconsideration July 3, 2006.

---

David J. Pettinato, Merlin Law Group, P.A., Tampa, FL, for Plaintiff.

Cecelia B. Skeen, J. Pablo Caceres, Butler Pappas Weihmuller Katz Craig LLP, Tampa, FL, for Defendant.

## ORDER

BAKER, United States Magistrate Judge.

This cause came on for consideration without oral argument on the following motions filed herein:

MOTION: MOTION FOR ATTORNEY'S FEES AND COSTS (Doc. No. 70)

FILED: January 10, 2006

THEREON it is ORDERED that the motion is DENIED.

MOTION: MOTION FOR ENTRY OF JUDGMENT AND TO CONFIRM APPRAISAL AWARD (Doc. No. 84)

FILED: January 31, 2006

THEREON it is ORDERED that the motion is DENIED.

MOTION: MOTION FOR SUMMARY JUDGMENT (Doc. No. 94)

FILED: February 22, 2006

THEREON it is ORDERED that the motion is DENIED.

### PROCEDURAL HISTORY AND BACKGROUND

"The first rule of hurricane coverage is that every broadcast must begin with palm trees bending in the wind." Carl Hiaasen.

This is a lawsuit about a different type of hurricane coverage—insurance coverage, following the damaging storms of

2004. According to the voluminous record,[1] Plaintiff owns a Hampton Inn which is insured by Defendant, Arch Specialty Insurance Company. The property was damaged on August 13, 2004, by Hurricane Charley. On September 5, 2004, Hurricane Frances roared in, and more damages were incurred. The Policy provided for several different types of coverage, including building structural loss, business property loss and business interruption loss, and Plaintiff wrestled with the daunting task of assessing its significant damages in order to make and support appropriate claims to the insurer. Due to the extent and nature of the damage, the situation was fairly fluid, with Plaintiff making decisions to repair, replace or salvage, as it struggled to return the property to operational status. For the insurer's part, Plaintiff's understandable difficulties in clearly defining its losses led to understandable difficulties adjusting the losses. Plaintiff made several claims of loss to its insurer, some of which overlap in time. A chronology of these various claims is essential to analyze this suit for breach of contract.

### After the Storms, but before any Formal Proofs of Loss were filed

It appears that the insurer (or the insurer's adjuster, Jack Goldin), and Plaintiff (or Plaintiff's representative, Public Adjuster Frank Fortson), had been in early communication following the hurricanes (Doc. No. 71–2). Before any proof of loss was filed, Plaintiff had discussions with the insurer, and the insurer sent experts to inspect the property (Doc. No. 71–2). On September 13, 2004, the insurer's architect emailed Plaintiff and requested various documents pertaining to re-roofing that had been done previously (Doc. No. 71–3). On September 27, 2004, Plaintiff received an advance in the amount of $200,000 (Doc. No. 70). On September 29, 2004, the insurer's contractor estimated the building damages at over a million dollars (Doc. No. 71–2 at 6).

### First Proof of Loss—building damage claim

According to the Complaint, Plaintiff submitted a sworn Proof of Loss in the amount of $1,055,311.75 on October 4, 2004 (Doc. No. 1). This claim was for the "carrier's undisputed building estimate" (Doc. No. 71–2, at 4–5). As Plaintiff had received a $200,000 advance on September 27, 2004, an additional payment in the amount of $855,311.75 was made on November 3, 2004 (Doc. No. 70). Thus, the first sworn proof of loss was tendered on October 4, 2004 and paid in full by November 3, 2004.

### Second Proof of Loss—building damage claim

Although not alleged in the Complaint, on October 20, 2004, Plaintiff, through its Public Adjuster, sent a second sworn proof of loss relating to the building damage, claiming a loss in the amount of $2,695,414.93 (Doc. No. 71–6 at 2–3).[2] On November 17, 2004, the insurer sent a

---

1. As set forth herein, the parties were given numerous opportunities to create a record, including the opportunity to create an evidentiary record through trial. The parties, however, have chosen to forego this opportunity and proceed via dispositive motion. *See* Doc. Nos. 77, 78. The Court thus makes its findings of fact from the record as provided by the parties.

2. Plaintiff disagreed with the carrier's contractor estimate, and claimed that the actual loss was much greater than the amount already paid.

letter to Plaintiff's representative, acknowledging receipt of the second proof of loss, and noting that the "building value and loss is still being reviewed and is subject to adjustment" but due to the volume of information involved, more time was needed "to review the claim to give a proper decision on payment." (Doc. No. 75–7). The insurer requested a meeting at the Property with Plaintiff's contractor to "go over the scope and cost" and pledged to stay in weekly contact until the meeting was arranged. *Id.*

On December 6, 2004, Plaintiff filed suit against Arch Insurance Company in state court, for breach of the insurance contract.

On January 18, 2005, Arch Insurance Company removed the action to federal court, on the basis of diversity jurisdiction (Doc. No. 1). That same day, Arch Insurance Company moved to dismiss the complaint, asserting that Arch Insurance Company was not a party to the insurance contract; rather, Arch Speciality Insurance Company, a separate but affiliated company, was the correct party (Doc. No. 3).

On January 25, 2005, the parties met with their adjusters at the property (Doc. No. 71 at 8). On January 31, 2005, Arch Speciality formally invoked the right set forth in the Policy to an appraisal (as to the building loss) (Doc. No. 14–2).

On February 11, 2005, the District Court granted the motion to dismiss, dismissed the Complaint, and allowed Plaintiff 10 days to file an amended complaint against Arch Speciality Insurance Company (Doc. No. 16). An Amended Complaint

was filed against the correct defendant (herein "Arch") on February 18, 2005 (Doc. No. 17). On March 9, 2005, Arch filed a motion to dismiss the Amended Complaint, asserting that documentation requests and the appraisal demand were outstanding, and compliance with the documentation and appraisal provisions of the Policy were conditions precedent to suit (Doc. No. 20). Plaintiff opposed the motion, contending that Arch waived its right to invoke appraisal and noting that appraisal was addressed only to the property loss and not other losses. On May 3, 2005, the District Court found that the appraisal process was properly invoked by Arch and granted the motion to dismiss, in part; staying the action for a period of 90 days to allow the appraisal process to take its course (Doc. No. 27). In its Order, the District Court noted: "Tristar does not contest that the appraisal provision marks a precondition to suit under the Policy." *Id.* at 2.

The appraisal process itself was fraught with conflict, and the wrangling is reflected in motions for protective orders, and various related hearings and proceedings. *See* Doc. Nos. 29–50. On October 11, 2005, however, the Parties' Appraisers and Umpire came to a final agreement and executed a Final Appraisal Award regarding the building damage claim (Doc. No. 51 and 52).[3] The Appraisal Award was paid by the insurer on October 27, 2005 (Doc. No. 71–2 at 10).

### Proof of Loss—Business Property

On October 20, 2004, the Public Adjuster submitted a sworn Proof of Loss relating to a business personal property claim in the amount of $594,283.74 (Doc. No. 71–2

---

**3.** Interestingly, although both sides claim to attach the Appraisal Award to their filings, the attachment is merely a bill for services.

at 5).[4] On November 17, 2004, the insurer sent Plaintiff a letter (described above), acknowledging receipt of the "contents" claim, and noting that the insurer was "continuing to review" the contents inventory submitted, but due to the volume of information, "this will take several days" and required adequate time to review the claim to give a proper decision (Doc. No. 75–7). The insurer requested a meeting on site. *Id.* It was noted that Plaintiff had contracted with a salvor to determine salvage value of the contents and to handle any resulting sale, and "this was acceptable" to Arch. *Id.*

As detailed above, Plaintiff filed suit in state court on December 6, 2004.

On December 28, 2004, a check was issued in the amount of $300,000 for an advance of business personal property, based on the October 20, 2004 proofs of loss. (Doc. No. 71–2 at 8).

On January 25, 2005, the parties met at the property. On February 18, 2005, Arch issued a $108,212.25 check for business property damage (Doc. No. 71–2 at 9). It appears that an additional check for $2,561.39 was tendered on July 12, 2005, for business personal property (Doc. No. 70 at 4, Doc. No. 71–2 at 9).

On October 20, 2005, the undersigned held a hearing, originally scheduled to supervise the appraisal process, and inquired as to the status of the case (Doc. No. 54). At that hearing, Plaintiff claimed that although the building claim was resolved by the appraisal, more monies were owed regarding a related, but as yet unarticulated, business interruption and expense claim.[5] Arch asserted that it promptly adjusted the claims as they were documented, but that it had repeatedly requested additional documentation and Plaintiff had yet to present any other sufficient claim to adjust.[6] Based on Plaintiff's representation that there was an unfinalized claim yet to be presented, the Court ordered Plaintiff to file an Amended Complaint, and to tender to Defendant "a complete and final proof of claim, with all necessary supporting documentation" no later than November 10, 2005 (Doc. No. 55).

Plaintiff provided documentation, as ordered, on the depreciation hold-back business personal property loss on November 10, 2005, and Arch paid it ($186,070.75) the next day (Doc. No. 68 at 2–3; Doc. No. 70–1 at 4).

### Initial Business Interruption Claim—No Sworn Proof of Loss tendered

Although no formal sworn proof of loss was filed, Plaintiff contends that Arch

---

**4.** Illustrative of Plaintiff's difficulties in articulating and supporting its claims to the insurer and to this Court, Plaintiff's Public Adjuster avers that he submitted a sworn proof of loss regarding business property (contents) (Doc. No. 71–2 at 5 and Doc. No. 74–2 at 7). Plaintiff's counsel, on the other hand, states that Arch tendered payments for business personal property "notwithstanding that no SSPL [Sworn Statement in Proof of Loss] had been submitted by Hampton Inn for either Business Income or Business Personal Property." (Doc. No. 70–1 at 4).

**5.** At hearing, the Court inquired of Plaintiff's counsel as to the amount of the loss: "Can you tell me standing here today what it is you

think you are owed?" Counsel responded: "The exact amount, no, I don't know. I know it's more than—". The Court replied: "Then how are they supposed to know?" Doc. No. 88, Tr. 8: 11–15. Plaintiff acknowledged that it received a business interruption payment on December 29, 2004, and another on September 8, 2005, and noted "We're trying to put together a file claim now." *Id.* at 7.

**6.** The record includes correspondence from Arch's counsel throughout the process, explaining the need for clarification and documentation, under the Policy. *See* Doc. No. 93–3.

"knew" that Plaintiff had sustained business income and extra expense losses, as the hotel was partially shut down from August 13, 2004 and fully shut down from September 5, 2004 through January 2005 (Doc. No. 71–2 at 2).

On September 17, 2004, following a telephone conversation between the parties' representatives, Plaintiff's adjuster forwarded three years of financial statements to Arch "in an effort to *begin* submitting documentation regarding the Business Income and Extra Expense claim for the hotel." (Doc. No. 71–2 at 3, emphasis added). Plaintiff's representative notes that he was "starting to send documentation" in support of the claims at that time (*Id*). Arch contends that Plaintiff never communicated a specific dollar amount of what it thought was owed on this claim (Doc. No. 59–2 at 5).

On November 17, 2004, Arch sent Plaintiff the above described letter which, in addition to those matters discussed above, also advised that Arch had retained a CPA to "review and evaluate the business income claim," including the documentation provided by Plaintiff. (Doc. No. 75–7). On November 19, 2004, the CPA wrote to Plaintiff's adjuster, referencing a previous telephone conversation, and requested specific additional documentation (monthly P & L's and franchise and management fee agreements) (Doc. No. 59–3).

On December 20, 2004, Arch Speciality Company issued a check in the amount of $217,181.15 for business income claim loss from August 13, 2004 to December 31, 2004. Arch issued another check on September 8, 2005, in the amount of $61,898.86, for business interruption (Doc. No. 71–2 at 9). Arch understood this to satisfy the business income claim, as there was no indication from Plaintiff's adjuster

that the payments were inadequate, or that additional amounts were owed (Doc. No. 59–2 at 5).

As stated above, the Court held a status conference on October 20, 2005, and Plaintiff asserted an additional but not yet articulated claim for business interruption loss. Arch avers that this was the first indication "that Plaintiff thought Arch's prior payments on the business income claim were insufficient …". (Doc. No. 68, footnote 1). As detailed above, the Court ordered Plaintiff to file an amended complaint, and to provide a complete and final proof of claim with all documentation no later than November 10, 2005. This became the final claim.

**Additional Business Income Claim and Extra Expense Claim [Second Amended Complaint]**

On October 31, 2005, Plaintiff filed its Second Amended Complaint (Doc. No. 56).

On November 8, 2005, Plaintiff filed a notice with the Court, stating its total business income and extra expense claim ($986,600—Total Business income claimed was $295,400.00; extra expense was $691,200.00) (Doc. No. 57). Plaintiff provided supporting documentation for that claim at that time. As Arch had already paid $279,080.01 in business income losses, the newly asserted business income claim was for approximately $16,000.00 additional. The "extra expense" claim was described as a calculation of actual expenses during the impact period versus projected normal expenses, and appeared to include items that may have been covered by prior payments (Doc. No. 57–2 at 2–3).

On November 14, 2005, Arch moved to dismiss the Second Amended Complaint, asserting, yet again, that suit was premature in that the claim was just articulated

and was in the process of being adjusted (Doc. No. 59). The motion was denied, without opinion, by endorsed Order of the District Court (Doc. No. 61).

On December 5, 2005, the parties attended a settlement conference before the undersigned (Doc. No. 63). At that time, the parties consented to the jurisdiction of the United States Magistrate Judge (Doc. No. 89). At conference, the newly asserted business interruption claim was compromised by the parties splitting the difference (Arch paying an additional $8,160.00) (Doc. No. 89 at p. 28). The remaining issue was the recently asserted extra expense claim in excess of $600,000.00.[7] Arch contended that it did not have sufficient supporting explanation and documentation regarding the claim, but in any event, to the extent it included temporary repairs these were paid as part of the appraisal award; Plaintiff asserted that they should be viewed as part of a separate business interruption claim. The undersigned concluded the conference and advised the parties regarding readying themselves for trial.

On December 7, 2005, Arch answered the Second Amended Complaint, asserting *inter alia* that Plaintiff had not complied with the Policy and the suit was premature (Doc. No. 65). The Court issued a Trial Order on the remaining extra expense claim.

On December 28, 2005, Plaintiff sent Defendant a letter which stated, in pertinent part:

> Tristar hereby notifies Arch Specialty that it considers its Extra Expense claim to be completely resolved, and seeks no further payment of insurance monies with regard to its Extra Expense claim (Doc. No. 68, at 10).

In noting that "all contractual damages due and owing Tristar have been resolved in favor of it," Plaintiff demanded attorney's fees pursuant to Fla. Stat. § 627.428. *Id.*

Arch sought a status conference and asked for dismissal of the claim or a summary judgment declaring that there had been no breach of contract (Doc. No. 68). The Court granted the motion for a hearing, and a case status conference was set for January 12, 2006 (Doc. No. 69). On January 10, 2006, Plaintiff moved for attorney's fees and costs. The motion acknowledged that Arch had paid significant amounts of money prior to any suit being filed and had paid additional amounts post suit.

At status conference, the Court cancelled the trial date, as the parties desired to proceed on the papers with respect to a finding as to the issue of whether Plaintiff is entitled to attorney's fees and costs, and a briefing schedule was set (Doc. No. 78).

On January 31, 2006, Plaintiff filed its motion for entry of judgment and to confirm the appraisal award. Defendant has responded to that motion (Doc. No. 90) and to the motion for attorney's fees (Doc. No.93), and has moved for summary judgment. Plaintiff has filed its opposition (Doc. No. 96), and both sides have filed additional notices and authorities (Doc. Nos.95, 97, 98). The matter is now ripe for resolution.

### ISSUES AND ANALYSIS

The parties agree that there are no coverage issues to adjudicate and the sole

---

7. There were other minor issues involving the correct name of the payee and the newly raised signage damage claim, both since adjusted.

issue is whether Plaintiff is entitled to an award of attorney's fees and costs, given the sequence and circumstances of the claims being made, processed and paid. Plaintiff contends that it is entitled to fees under Florida law, as Defendant's payment of the claims post-suit are "confessions of judgment." Defendant asserts that it cannot be liable for fees in that there has been no breach of contract, no judgment entered, and the suit was brought prematurely. For the reasons set forth herein, the Court finds that, under the circumstances presented here, Plaintiff is not entitled to an award of fees, and the action is due to be dismissed.

### The Insurance Policy

We begin where we must: with the terms of the insurance contract. The Policy provides:

### BUILDING AND PERSONAL PROPERTY COVERAGE FORM

\* \* \* \* \* \*

### E. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

\* \* \* \* \* \*

### 2. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.\* \* \*

### 3. Duties in the Event of Loss or Damage

a. You must see that the following are done in the event of loss or damage to Covered Property:

\* \* \* \* \* \*

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

\* \* \* \* \* \*

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. \* \* \*

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

\* \* \* \* \* \*

### 4. Loss Payment

a. In the event of loss or damage covered by this coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replac-

ing the lost or damaged property, ... [8]

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, ...

\* \* \* \* \* \*

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

\* \* \* \* \* \*

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

(Doc. No. 56–2).

## BUSINESS INCOME AND EXTRA EXPENSE COVERAGE

\* \* \* \* \* \*

### C.  Loss Conditions

\* \* \* \* \* \*

(4) Take all reasonable steps necessary to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.

(5) As often as may be reasonably required, permit us to inspect the property

proving the loss or damage and examine your books and records....

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation and settlement of the claim.

(8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

(Doc. No. 56–3).

The Policy also notes:

### D.  Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

1.  There has been full compliance with all of the terms of this Coverage Part ...

(Doc. No. 56–3).

The relationship between insurer and insured is also governed by statute and Florida case law.

### *Florida Law* [9]

Fla. Stat. § 627.428 provides, in pertinent part:

Attorney's fee

(1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract

---

8.  Another provision notes that the Insurance Company will not pay on a replacement costs basis for any loss or damage "until the lost or damaged property is actually repaired or replaced." (Doc. No. 56–2 at 30).

9.  This is a diversity action, and it is undisputed that Florida law controls.

executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

Plaintiff correctly sets forth the legislative intent of the provision:

The Supreme Court of Florida has ruled that the purpose of Florida Statute § 627.428 (and its predecessor) is to discourage the contesting of valid claims by insurance companies and to reimburse successful insureds for their attorney fees when they are compelled to defend or sue to enforce their insurance contracts. *Insurance Company of North America v. Lexow*, 602 So.2d 528 (Fla. 1992). The Statute penalizes insurers for wrongfully causing its insureds to resort to litigation to resolve a conflict. *Leaf v. State Farm Mutual Automobile Insurance Co.*, 544 So.2d 1049 (Fla. 4th DCA 1989); *Government Employees Insurance Company v. Battaglia*, 503 So.2d 358 (Fla. 5th DCA 1987).

(Doc. No. 70 at 9).

■ Moreover, Plaintiff correctly notes that Florida courts have held that, in certain circumstances, payment of the claim is the functional equivalent of a confession of judgment or verdict in favor of the insured; reasoning that the insurance company should not be able to avoid the statutory provision by merely waiting until suit is filed before paying proceeds. *Mercury Insurance Co. v. Cooper*, 919 So.2d 491 (Fla. 3rd DCA 2005). Further, "a trial court has no discretion to deny reasonable attorney's fee to the prevailing plaintiff where the insurance company first disputes the claim and then settles the case after a lawsuit is filed." *Amador v. Latin American Property and Casualty Insurance Company*, 552 So.2d 1132, 1133 (Fla. 3d DCA 1989); *Losicco v. Aetna Casualty & Surety Company*, 588 So.2d 681 (Fla. 3d DCA 1991). Thus, the law is clear that if Plaintiff was compelled to sue because the insurance company wrongfully caused it to resort to litigation, fees must be awarded if the policy is paid after suit. Such is not the case here.

■ As the above chronology indicates, at the time this Defendant was sued, it had already paid well over a million dollars on the building claim, hundreds of thousands of dollars on other claims, and was in the process of adjusting the remaining claims. Although Plaintiff contends that Arch "failed to timely pay all insurance proceeds due and owing," there is no evidence in this record to support such a conclusion. Indeed, Plaintiff does not identify when the various claims were due and payable. In order to determine whether the insurance company breached its contract, we must examine each claim made, in light of the parties' respective duties under the Policy and Florida law.

**The building damage claims**

As noted above, Plaintiff tendered the first sworn proof of loss and it was paid within 30 days. As a matter of law, there can be no liability for breach with respect to this claim, as the insurer timely paid in full.

As for the second building damage claim, Plaintiff filed its proof of loss on October 20. As required by the Policy, Arch responded within 30 days with its intentions: to review the multi-million dol-

lar claim and supporting documentation and to meet with the insured on site to go over the loss. Considering the scope of the claim, and the fact that the insurer had already paid over a million dollars based on the first proof of loss relating to the same alleged loss, the insurer cannot be said to have acted unreasonably in asserting its rights to inspection and further investigation of the claim, as set forth in the Policy. According to the Policy, Plaintiff had a duty to cooperate with Arch and allow such an inspection, in the process of adjusting the claim.

Plaintiff filed suit on December 6. At the time suit was filed, Plaintiff can point to nothing to indicate that the policy terms were breached with respect to this claim. Following filing of the suit, the supplemental building claim went to appraisal, as provided for in the Policy, and the claim was timely paid in full following issuance of the appraisal. As noted by the District Judge, Plaintiff did not contest that the appraisal was a precondition to the suit under the Policy (Doc. No. 27 at 2). Thus, Plaintiff has failed to articulate any breach of the Policy sufficient to justify filing suit on the building claim, and the payment of the claim, following the appraisal award, was timely and in accordance with the Policy.

**The Business Property Claim**

Here, as well, Plaintiff fails to articulate a basis for finding breach. The record shows that a substantial contents claim was made on October 20. The insurer responded on November 17, within the 30 days provided by the Policy, and set forth its intention to review the voluminous claim, and meet with Plaintiff at the site. The insurer also noted that a salvor was involved with respect to inspecting the contents and determining value and disposition of the property, and this was acceptable. Although it is evident that Arch was being responsive in reviewing and adjusting the claim, consistent with the Policy, Plaintiff sued less than three weeks later. Again, Plaintiff identifies no duty breached by the insurer. The insurer did not reject the claim, as its letter plainly notes, but required additional time and information in order to process it.[10] Under the circumstances presented here, and in view of the fact that Arch had already been in frequent communication with Plaintiff regarding the losses and had already paid over a million dollars on the related claim, the insurer was within its rights to adjust the claim. The claim was not rejected; Plaintiff was not ignored. At the time suit was filed, no breach had occurred.

Moreover, Plaintiff identifies no post-suit breach with respect to this claim. By December 28, 2004, an advance of $300,000 was paid and, less than a month after the parties met at the site, an additional $108,212.25 was paid. Arch has contended throughout this suit that it was exceptionally difficult to obtain requested information and supporting documentation from Plaintiff with respect to these claims, and, as information was provided, the claims were paid. As noted above, in his papers and at hearing, Plaintiff's counsel has had difficulty articulating its claims to the Court, preferring to rely on a general assertion that "monies are owed" without supporting explanation. As cooperation with the insurer in providing documenta-

---

**10.** As quoted above, the Policy provides that the insurer has the option of paying the value of the lost property, or the cost to repair or replace it. The Policy implies a reasonable time for the insurer to investigate these options.

tion is a condition precedent to payment of the claims, as well as to bringing suit, Plaintiff has not carried its burden of establishing that the delay in payment of this claim was due to the insurer's breach.

As for the additional depreciation hold back claim, the record shows that this claim was not properly asserted until November 10, 2005, and the insurer paid it on November 11, 2005. No breach is established.

**Business Interruption/Income**

The Court notes that Plaintiff did not comply with the provision requiring a sworn proof of loss with respect to this loss, but the insurer accepted the claim and processed it anyway.[11] Following receipt of the October 20 proof of loss directed to the other claims, Arch sent Plaintiff the above described letter which, in addition to those matters discussed above, advised that Arch had retained a CPA to "review and evaluate the business income claim," including the documentation provided by Plaintiff. On November 19, just two days later, the CPA wrote to Plaintiff's adjuster and requested specific relevant additional documentation. Suit was filed December 6. Plainly, at the time suit was filed, this claim was in the process of being adjusted and the insurer was awaiting additional requested documentation. Indeed, on December 20, 2004, less than a month after requesting the information, Arch issued a check in the amount of $217,181.15 for business income claim loss from August 13, 2004 to December 31, 2004. Again, Plaintiff has not established breach in that it has not established the amount of the claimed loss or that the insurer had a duty to pay prior to December 6. As noted above, Plaintiff did not

articulate the specific amount of the loss it was claiming, but, rather, sent the insurer various documents for the insurer to evaluate, regarding an appropriate amount. Arch requested additional information, hired an expert, evaluated the "claim" and paid it.

Moreover, Arch continued to accept, evaluate and pay for business income losses as they were presented and documented. Arch issued another check on September 8, 2005, in the amount of $61,898.86, for business interruption, and, as detailed above, an additional claim was made in early November and compromised in December. There is no evidence that the insurer denied any claim; rather, the evidence indicates that it was Plaintiff that struggled to define its claims. Plaintiff had a great deal of difficulty even *articulating* the basis for its Second Amended Complaint; admitting at hearing that it *did not know* the amount of the claim and was *in the process* of putting it together. Indeed, the extra expense claim—over $600,000—was abandoned by Plaintiff, presumably because it was, as suggested by the insurer, part of the building damage claim which was already paid for in full. There has been no showing that the insurer failed to timely pay claims properly made and substantiated, sufficient to warrant the suit.

Plaintiff appears to cite the above authorities for the proposition that the Court has no discretion not to award fees whenever a Plaintiff sues an insurer and money is later paid. The Court declines to read the statute so broadly, for several reasons. If Plaintiff were correct, then it would behoove every policyholder to sue whenever a claim is contemplated, because, regardless of whether the claim is eventually

---

11. This is hardly the hallmark of a recalcitrant insurer.

adjusted downward or paid in full, attorney's fees would automatically result. *See Basik Exports & Imports, Inc. v. Preferred Nat. Ins. Co.*, 911 So.2d 291 (Fla. 4th DCA 2005) (noting, in a similar context, that insurers would be discouraged from settling third-party claims they defend under a reservation of rights for settlement will subject them to paying attorney's fees for an unnecessary declaratory judgment action filed by the insured). This, however, would be contrary to the stated purpose of the statute: discouraging lawsuits and encouraging timely payments of claims. If the insurer knows it will eventually have to pay attorney's fees regardless, it loses the incentive to pay the claim timely, and this would raise the likelihood that the claim will be contested.[12] Moreover, there is a fundamental due process concern in finding that an insurance company which appropriately pays a valid claim according to the Policy terms must still pay attorney's fees, because a claimant sued it to do what it was already in the process of doing. As stated above, this statute, and its predecessors, have consistently been interpreted to authorize recovery of attorney's fees from an insurer only when the insurer has wrongfully withheld payment of the proceeds of the policy. *See New York Life Insurance Company v. Shuster*, 373 So.2d 916 (Fla.1979); *Manufacturers Life Insurance Company v. Cave*, 295 So.2d 103 (Fla.1974); *The Equitable Life Assurance Society v. Nichols*, 84 So.2d 500 (Fla.1956).

For similar reasons, the Court rejects Plaintiff's argument that payments made pursuant to the provisions of the Policy are somehow converted into a confession of judgment if done after suit is prematurely filed. The filing of a lawsuit does not extinguish the insurer's obligations under the Policy to adjust and pay the claim. While Florida law does hold that payments are treated as confessions of judgment where an insurer first disputes the claim and then settles, the existence of a bona fide dispute and not the mere *possibility* of a dispute, is a crucial condition precedent to such a holding. *See Wollard v. Lloyd's and Companies*, 439 So.2d 217, 218 n. 2 (Fla.1983) (recognizing as a "threshold issue" "the requirement that the insurance company unreasonably withhold payment under the policy as a condition precedent to the award of attorney's fees.") Here, as noted above, there has been no such breach shown.

Absent a judgment of breach, a "confession of judgment," or a settlement on a disputed claim, Plaintiff seeks a judgment on the appraisal. This, too, is misguided. The Second Amended Complaint did not seek a judgment on the appraisal, and in fact, the appraisal award was timely paid as of the date of filing the Second Amended Complaint.[13] Thus, the motion to confirm the award was moot when filed months later. Plaintiff is not entitled to a judgment under these circumstances. *Na-*

---

**12.** Florida has recognized a public policy to encourage insurance companies to resolve conflicts and claims quickly and efficiently through alternative dispute resolution avenues such as appraisal. *Nationwide Property & Casualty Ins. v. Bobinski*, 776 So.2d 1047, 1049 (Fla. 5th DCA 2001) (noting that appraisal and arbitration will hopefully "serve to suppress the ever increasing cost of insurance protection.") *Id.* This public policy is compromised if an insurer is sued prior to completion of the appraisal process. *But see Travelers v. Meadows MRI, LLP.* 900 So.2d 676 (Fla. 4th DCA 2005).

**13.** The record reflects that the check was issued October 27, 2005, and hand delivered October 31, 2005—the date the Second Amended Complaint was filed. Moreover, as recognized by the District Court in its Order dismissing the Amended Complaint, the ap-

*tionwide Property & Casualty Insurance v. Bobinski,* 776 So.2d 1047 (Fla. 5th DCA 2001) (no attorney's fees awarded when appraisal is paid prior to suit, and appraisal award is not a final judgment under Section 627.428).

While Plaintiff cites a plethora of cases in favor of attorney's fees, the Court finds that none of these reflect the situation at bar; namely, a Plaintiff who has failed to show that the insurer breached any duty to investigate, adjust and timely pay under the Policy.

*Mercury v. Cooper, supra,* involved an insurer who settled with a third party and then dismissed a declaratory judgment action it had filed. The Third District Court of Appeal found that the unilateral decision of the insurance company to settle with the injured third party and dismiss the declaratory judgment action triggered a right to fees for the insured. 919 So.2d at 491. Here, of course, the insurance company did no such thing. There was no settlement of a contested claim, and no dismissal of a suit filed by Arch.

*United Automobile Insurance Company v. Zulma,* 661 So.2d 947 (Fla. 4th DCA 1995) held that when the insurer agrees to settle a disputed case it has, in effect, declined to defend its position in the pending suit, and thus payment is the functional equivalent of a confession of judgment. Here, however, Arch never declined to defend its position. Indeed, its position, asserted consistently, has been that the lawsuit is premature in that the claims were being adjusted and appraised in accordance with the Policy. Thus, it did not settle a dispute; it adjusted, and paid, the claim. *Zulma* is inapposite.

*Insurance Company of North America v. Lexow,* 602 So.2d 528 (Fla.1992) involved

praisal process was a condition precedent to

a subrogation claim recovery, following payment of policy limits. Finding "there is little difference between paying an insurance claim and then suing for its return and refusing to pay the claim in the first place," the Florida Supreme Court held that the statute applied. These facts, however, are not present or analogous here.

*Ivey v. Allstate Ins. Co.,* 774 So.2d 679 (Fla.2000) involved a claim for personal injury protection benefits. The court held, *inter alia,* that "[i]f a dispute arises between an insurer and an insured, and judgment is entered in favor of the insured, he or she is entitled to attorney's fees. It is the incorrect denial of benefits, not the presence of some sinister concept of 'wrongfulness,' that generates the basic entitlement to the fees if such denial is incorrect." This Court does not disagree. Again, however, Plaintiff has not shown that there was an incorrect denial of benefits in this case, or in fact, any denial of benefits.

Plaintiff's reliance on *Travelers v. Meadows MRI, LLP,* 900 So.2d 676 (Fla. 4th DCA 2005), is similarly misplaced. In that case, the insurance company took four months to determine whether or not there was coverage, and then commenced "a lengthy investigation" of the amount of the loss. Moreover, plaintiff filed suit long before the appraisal was completed, and obtained a final judgment confirming the appraisal award. As noted by the state court, Meadows' involvement of the formal judicial system was not unnecessary in that it had to retain counsel to compel the insurance company to accept coverage and to determine the proper procedure for the appraisal, and it was noted that Meadows' attempted to resolve any differences without resorting to formal legal action. Here,

filing suit.

however, Arch never disputed coverage (let alone took four months to acknowledge it), paid the first proof of loss in full presuit, and continued to pay, including payment of the appraisal, without a court order or judgment to do so. The claimants in the two cases are not comparable.

*Stewart v. Midland Life Insurance Co.,* 899 So.2d 331 (Fla. 2nd DCA 2005) is a life insurance case, interpreting the provision of Florida law disallowing an attorney's fee if suit was commenced prior to 60 days after proof of claim was filed with the insurer. Fla. Stat. § 627.428(2). As suit was filed there 86 days after proof of claim, and the insurer then paid in full, attorney's fees were allowed. No such statutory provision applies to the instant case. The terms of the Policy control.

The Court finds that this case is more analogous to the line of cases denying attorney's fees awards, in the absence of any breach of contract by the insurer. *See Garcia v. Lumbermens Mutual Insurance Company,* 246 So.2d 574 (Fla. 3rd DCA 1971) (where there is no denial of coverage and no necessity to institute suit to confirm or collect on an arbitration award, attorney's fees were not awardable); *Geico v. Battaglia,* 503 So.2d 358 (Fla. 5th DCA 1987) (a fee was not properly awarded when there was no evidence that the insurer wrongfully denied coverage); *Fortune Insurance Co. v. Iriban,* 593 So.2d 598 (Fla. 3rd DCA 1992) (reversing attorney's fees judgment because insurance benefits were not wrongfully withheld).

In *Obando v. Fortune Insurance Co.,* 563 So.2d 116, 117 (Fla. 3d DCA 1990), the appellate court affirmed an order denying attorney's fees. As stated by that court:

At the time the complaint was filed, there were no unpaid medical bills pending and the carrier had asked for follow-up information and any additional medical bills. When subsequent medical bills accrued and the aggregate exceeded the insured's $2,000 deductible, the carrier settled all claims submitted within thirty days. Consequently, until such time as benefits were wrongfully withheld, the insured's attorney was in no better position than the insured himself to claim a denial of coverage and the right to any applicable attorney's fees.

*Id.* Here, too, absent a showing that the benefits were wrongfully withheld, counsel is in no position to claim a denial of coverage, and thus, no attorney's fee is properly awardable.

A final note is in order. The Court stresses that this decision does no more than enforce the long-standing policy of the state of Florida that attorney's fees are not available under the statute unless there is a showing that the insurance company incorrectly denied benefits. The decision is not to be interpreted as encouraging insurance companies to engage in lengthy adjustment processes and the Court cautions that an unreasonably long adjustment process can well result in a delay of payment sufficient to constitute a breach. The Court finds, however, that such did not occur in this case. Suit was filed (albeit against the wrong defendant) only a month and a half after filing the second proofs of loss, and after the first proof of loss (over a million dollars) was already paid in full. While Plaintiff wanted immediate payment, it did not contract for that, nor is such reasonable or even possible, considering the scope of the disaster and the size of the loss, particularly where the claimant itself was uncertain of the size of its claims. Here, the insurer acted in accordance with the Policy at all

relevant times. As such, no attorney's fees are due under Florida law, and no entitlement to pre-judgment interest has been shown.

The Second Amended Complaint is thus dismissed, with prejudice, with each party to bear its own costs. The Clerk is directed to enter a final judgment in favor of Defendant, terminate all pending matters, and close the file.

## ORDER ON RECONSIDERATION

This cause came on for consideration without oral argument on the following motion filed herein:

MOTION: MOTION FOR RECONSIDERATION (Doc. No. 102)

FILED: June 13, 2006

THEREON it is ORDERED that the motion is DENIED.

Plaintiff moves for reconsideration of the Court's Order (Doc. No. 99), or alternatively, to alter or amend the judgment or vacate the judgment, pursuant to Rule 59(e), Federal Rules of Civil Procedure. The motion is without merit, and is therefore denied.

■■■■ The decision to alter or amend a judgment is an "extraordinary remedy," *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D.Fla.1994), and one that "is committed to the sound discretion of the district judge." *Am. Home Assur. Co. v. Glenn Estess & Assocs.*, 763 F.2d 1237, 1238–39 (11th Cir.1985). This Court has recognized three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to

correct clear error or prevent manifest injustice. *Sussman.*, 153 F.R.D. at 694. A motion for reconsideration must demonstrate why the court should reconsider its prior decision and "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Cover v. Wal–Mart Stores, Inc.*, 148 F.R.D. 294 (M.D.Fla.1993). A party "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir.2005).

Applied here, Plaintiff presents no evidence of an intervening change in controlling law. Indeed, as pointed out by Defendant in its response, since the Court's Order, the Florida Second District Court of Appeal has issued (in non-final, slip opinion) a decision similarly recognizing that wrongful conduct is necessary in order to impose a fee award against the insurer under Fla. Stat. § 627.428. *See Liberty National Life Insurance Company v. Bailey*, 2006 WL 1667352 (Fla. 2d DCA June 16, 2006). There is no basis to reconsider on this ground.

As for the availability of new evidence, Plaintiff cites to none, nor would any likely be available, considering the posture of the case.[1]

Thus, Plaintiff is left to contend that the Court committed clear error. Plaintiff raises three grounds in support of its motion: 1) its right to a jury trial; 2) alleged disputed fact issues; and 3) an alleged incorrect dismissal of the Second Amended Complaint.

In support of its first ground, Plaintiff asserts that a right to a jury trial is invio-

---

1. At the time the Order was issued, all claims under the Policy had been paid. The only issue was the entitlement to attorney's fees under Florida statute.

**1302**

late and that the Court erred in disposing of the case on the papers. As contended by Plaintiff:

> TRISTAR'S Motion For Entitlement to and Determination of Attorney Fees, Costs, and Prejudgment Interest (see Doc. # 70) presented only the issue of whether the Court could decide entitlement under Florida's attorney fee statute, § 627.428, based on the insurer's payments after suit was filed. \* \* \*

> What the Court's order fails to recognize is that TRISTAR, pursuant to Florida law, was not required to argue a breach of the insurance contract to seek reimbursement of attorney's fees pursuant to § 627.428, since by law, post-suit payment(s) of insurance benefits are presumed as a confessions of judgment. (See Doc. # 70). The question of a breach was not one of the issues presented in TRISTAR'S Motion, and was reserved for a trial by jury if the Court were to deny TRISTAR'S Motion. If the Court were to determine that sufficient justification for attorney's fees was not shown by the matters of record, then the next step would be to set the matter for a trial by jury on the issues raised in TRISTAR's Second Amended Complaint.

█ The Court rejects Plaintiff's contentions as disingenuous. The parties conceded that all outstanding claims pursuant to the Policy had been resolved. Thus, there were no "issues raised in Tristar's Second Amended Complaint" left for determination by a jury or otherwise; Plaintiff's sole remaining claim was for attorney's fees—a claim that was *not* derived from the Policy, but, as recognized by

Plaintiff, was brought "pursuant to Florida's attorney fee statute, § 627.428."[2] There is no right to a jury trial pursuant to this statute. *See Empire State Insurance Co. v. Chafetz,* 302 F.2d 828 (5th Cir.1962) (no constitutional right to have a jury decide whether or not to award attorneys' fees under this statute); *Mid–Continent Casualty Co. v. Giuliano,* 166 So.2d 443 (Fla.1964) (same).

Moreover, the Court is not swayed by Plaintiff's selective citation to the transcript. While counsel initially stated that he wanted a jury trial "if it's an issue to try to see if we breached the contract or did they" (*See* Transcript of January 12, 2006, at p. 11), when pressed by the Court, Plaintiff's counsel took the position that entitlement was established by law, as Defendant had confessed judgment by paying monies:

> \* \* \* In fact, Your honor, they should have filed a dec action and asked this court to determine whether they had any obligations to pay given his allegations of our breach and failure to cooperate. That's all been waived. These are all mooted. They paid the monies. By law this isn't an issue any more. That's why I don't understand when you're saying we need to have a hearing on that issue. By law its disposed of.

(Transcript at 12).

Following an extended colloquy, the Court summed up its understanding of the parties positions:

> THE COURT: Mr. Caceras, you indicated at the start of the argument or discussion here that you were at least interested in filing a summary judgment motion of some sort.

**2.** *See* Transcript of January 12, 2006—Doc. No. 102–2, at Transcript pg. 3, where Plaintiff's counsel notes that the claim was

concluded "except for the court for [sic] determining entitlement and determination of attorney's fees and costs."

MR. CACERAS: Yes, Your Honor.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: And Mr. Pettinato, your position, as I understand you, is that the record is already sufficient to establish your entitlement to fees and you just want a hearing on the determination of the appropriate amount. That as is typical would be done without a jury.

MR. PETTINATO: I'm just thinking about what you said to make sure. I agree that—

THE COURT: Based on your reading of the case law and what the exchange of documents and really undisputed history of events, I think there are some disputes about the history of events, but they may not be material.

MR. PETTINATO: Exactly. I agree with what you're saying is that there's enough in the record to indicate that we are entitled to fees, but I filed a motion for entitlement and determination because they have kept on objecting to entitlement, so therefore I had to provide you with a legal argument in my motion I filed a day or two ago that briefs out why I'm entitled to attorney's fees in the case. And I also filed this affidavit in support of it which outlines, directly contradicts, much of—

THE COURT: You're trying to argue the merits here and I'm not doing that today.

(Transcript at 17–18).

The Court set a briefing schedule based on the parties' agreement to go forward on dispositive motions as to the only remaining issue: Plaintiff's entitlement *vel non* to attorney's fees. As for Plaintiff's new assertion that "[t]he question of a breach was not one of the issues presented in TRISTAR'S Motion, and was reserved for a trial by jury if the Court were to deny TRISTAR'S Motion," the transcript shows otherwise:

> MR. CACERAS: Your Honor, if I may, just in one sentence I'll frame the issue just so it's clear. Mr. Pettinato claims that we've confessed judgment by simply paying the claim after the lawsuit was filed. Our response is there was no breach of this contract, we are defending against any breach. We paid timely. There was no breach. Therefore, you're not entitled to fees. In fact, summary judgment in our favor.
>
> THE COURT: That's what I understand your argument to be.
>
> MR. PETTINATO: And I won't reiterate because you understand.

(Transcript at 20). As is indicated, the pivotal issue of whether Arch breached the contract was the basis of the summary judgment motion. Plaintiff took the position that entitlement was established as a matter of law, so no hearing was necessary to establish it. To the extent Plaintiff did not prevail on this theory, and now seeks to try again before a jury, such an effort is misguided. Motions for reconsideration should not be used to raise arguments which could, and should, have been made before entry of judgment, or to assert new theories of liability. *See Mays v. U.S. Postal Service,* 122 F.3d 43, 46 (11th Cir. 1997); *O'Neal v. Kennamer,* 958 F.2d 1044, 1047 (11th Cir.1992); *Lussier v. Dugger,* 904 F.2d 661, 667 (11th Cir.1990). " 'A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.' " *Lussier,* 904 F.2d at 667 (quoting *Freeman v. Continental Gin Co.,* 381 F.2d 459, 469, *reh'g denied,* 384 F.2d 365 (5th Cir.1967)). No error is present.

Plaintiff next contends that the Court made erroneous findings of fact, rather than leaving disputed factual issues to be resolved by a jury. The Court is unpersuaded. As discussed above, the issue of entitlement to fees under Florida's statute is a legal issue, not a jury one. Moreover, the Court ruled based on the undisputed material facts: the date of the claims made, the date payments were tendered, and the procedural facts as shown by the docket (when claims were made in this action, and what those claims were). These facts are not disputed by Plaintiff; rather, Plaintiff objects to the legal conclusions drawn by the Court from those facts. Applying the law to the undisputed, material facts is within the Court's purview when addressing dispositive motions. This ground does not merit reconsideration of the Court's ruling.

Finally, Plaintiff contends that it was error to dismiss the Second Amended Complaint, with prejudice. This, too, is unpersuasive. The parties agreed that all claims under the Policy (which necessarily must have included all claims set forth in the Second Amended Complaint) were satisfied and that the only remaining issue was that of attorney's fees. The Court disposed of the attorney's fee issue in its Order. As such, the complaint was moot. There was no error in dismissing it, and even if dismissal were procedurally improper in view of the granting of judgment, any such error was harmless as all claims pled were foreclosed by the judgment.

As no adequate ground has been raised sufficient to warrant reconsideration, the motion is **denied**.