*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0340p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JANET E. MOHNKERN,

        *Plaintiff-Appellant,*

    *v.*

THE PROFESSIONAL INSURANCE COMPANY, f.k.a.
PROFESSIONAL INSURANCE CORPORATION,

        *Defendant-Appellee.*

No. 07-3486

---

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 02-07206—David A. Katz, District Judge.

Argued: June 10, 2008

Decided and Filed: September 8, 2008

Before: MARTIN and BATCHELDER, Circuit Judges; JORDAN, Senior District Judge.[*]

---

**COUNSEL**

**ARGUED:** Edgar H. Boles, MORIARTY & JAROS, Pepper Pike, Ohio, for Appellant. Joshua Bachrach, RAWLE & HENDERSON, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** Edgar H. Boles, MORIARTY & JAROS, Pepper Pike, Ohio, for Appellant. Joshua Bachrach, RAWLE & HENDERSON, Philadelphia, Pennsylvania, for Appellee.

    MARTIN, J., delivered the opinion of the court, in which JORDAN, D. J., joined. BATCHELDER, J. (pp. 8-12), delivered a separate dissenting opinion.

---

**OPINION**

---

    BOYCE F. MARTIN, JR., Circuit Judge. Plaintiff Janet Mohnkern brought suit claiming she was owed attorneys' fees under Florida law by defendant The Professional Insurance Company. The district court granted the defendant's motion for summary judgment, and Mohnkern now appeals that decision. We now AFFIRM.

---

[*] The Honorable R. Leon Jordan, Senior United States District Judge for the Eastern District of Tennessee, sitting by designation.

I.

The district court adequately recited the convoluted facts of this case:

> This is one of a number of satellite cases spawned by the litigation in *Liberte Capital Group et al v. Capwill*, Case No. 5:99 CV 818 (N.D. Ohio) and involving the viatical insurance industry.[1]
>
> It is undisputed that the Professional Insurance Company . . . ('PIC") issued a life insurance policy, Policy No. 2063622M, to Broderick J. Blacknell ("Blacknell"), a Florida resident, in the amount of $100,000. However, Blacknell's health problems and attendant medical bills led to him selling his policy in return for a sum less than the policy limits.
>
> In November 1998, Janet E. Mohnkern ("Mohnkern") invested $100,000 with Alpha Capital Group ("Alpha"), which solicited investors for placements in viatical settlements. Mohnkern's funds were placed in escrow with Viatical Escrow Services, LLC ("VES") until she was placed [] in the Blacknell policy. On March 9, 1999, Mohnkern was assigned the Blacknell policy in exchange for $49,995.00 of her initial $100,000 investment. The remainder of Mohnkern's investment was placed in another policy and is not at issue in this litigation. The assignment of the Blacknell policy to Mohnkern was recorded by PIC in April 1999 noting the "Approval of Absolute Assignment with Janet E. Mohnkern." (Amended Compl., Ex. B.)

In April 1999, Alpha and a company called Liberte Capital Group, another viatical settlement firm, commenced an action in federal district court against their escrow agent, James A. Capwill, alleging that Capwill misappropriated funds it held in escrow for Alpha and Liberte. The district court appointed a Receiver, and instructed the Receiver "to satisfy the claims of creditors, including investors and other parties, in the order of legal priority . . . ." *See Liberte Capital Group, LLC v. Capwill*, 99 F. App'x 627, 628-29 (6th Cir. 2004). The district court expanded the Receiver's duties on November 9, 1999, "to cover all interests in any and all insurance policies funded by investors which Liberte Capital, LLC or Alpha Capital, LLC contacted, which are or were in the name of James A. Capwill, Capwill & Co., CWN Group or any other name, either as nominee owner or as trustee . . . for the purpose of managing and administering insurance policies in which one of the foregoing either is named as owner, beneficiary or Trustee, including, but is not limited to death claims . . . ." It is undisputed that the Blacknell Policy was listed by name, and included, in the district court's order establishing a Receivership.

The district court summarized the remaining facts as follows:

> Blacknell passed away on November 14, 2000. Due to difficulties in ascertaining information about the location of Blacknell's death, it was not until October 1, 2001, that Alpha's escrow agent, NorthEast Escrow Services, LLC ("NES"), forwarded the certified death certificate and a copy of the policy assignment to Mohnkern. Approximately ten days later, Mohnkern submitted her claim to PIC on the Blacknell policy. The claim form indicates it was received on

---

[1] Generally, a viatical settlement is the sale of a life insurance policy by the policy owner before the policy matures. Such a sale, usually at a price discounted from the face amount of the policy but in excess of the premiums paid or current cash surrender value, provides the seller an immediate cash settlement. And the buyer is entitled to the death benefit upon the death of the original policy owner.

October 12, 2001 by Retirement Accounts, Inc., and forwarded to PIC and received by them on November 2, 2001.

In investigating the claim, PIC determined that Mohnkern was not the named beneficiary to the policy which required, in part, that Blacknell's estate sign off on the claim. By letter dated November 12, 2001, PIC advised Mohnkern that it needed certain documentation in order to proceed with the processing of her claim. PIC states, and Mohnkern does not dispute, that PIC received the requested documentation from her on November 26, 2001.

By early January 2002, PIC stood ready to pay the policy proceeds to Mohnkern. On January 3, 2002, PIC emailed Mohnkern that it was waiting to hear from NES on the status of the premium payments and wanted clarification from Mohnkern as to whom premium payment refunds were to be returned. On January 4, 2002, PIC received an email from NES and responded to NES as follows:

> Hi Lynn,
> Thank you for your e-mail. I authorized payment of the policy proceeds to Janet Mohnkern this morning. If you believe this decision is incorrect please let me know as soon as possible. I have not received confirmation yet as to when the check will go out but I'm assuming a few days. I will let Janet Mohnkern know as soon as I receive confirmation. My decision was based on the collateral assignment. The only remaining information I needed from you was on the premium refund. I believe that premiums were paid for a few months following the date of death. Janet Mohnkern believes that the premium refund should go to her, but I wanted to get your agreement on that issue prior to returning premiums to Janet. Do you agree that any excess premium payments should go to Janet Mohnkern and not to NorthEast Escrow Services? Thank you very much for your help with this matter.
> Scott Holman
> GE Financial Assurance.

Later that same day, NES advised PIC of the following:

> Dear Scott:
> Have been directed by the Federal Court-appointed Receiver, Mr. William Wuliger to express our concern over the payment of this death benefit. I understand that this death claim has been in the process for many months, but it is Mr. Wuliger's position that the court must okay the payment of this benefit. Mr. Wuliger is putting a motion before the court today for direction.
> Will forward to you, by mail, a letter explaining the situation along with the motion from court appointing Mr. Wuliger the Receiver and NorthEast Escrow Services as the court-appointed escrow agent over Alpha Capital Group. We then ask for your patience. Will forward to you the motion as who is to be paid, as soon as receive it.

Unfortunately, this policy is wrapped up in the receivership
(of Alpha Capital Group) and Mrs. Mohnkern does not know the
decision by Mr. Wuliger to allow the court to decide
Thank you.
Lynn Day
Operations.

PIC advised Mohnkern of these developments on January 6, 2002. The
Receiver filed his motion on the Blacknell death benefit in the *Liberte* action on
January 7, 2002 and it was approved by the Court on January 10, 2002. In
accordance with the directive in the Court order, PIC payed the proceeds from the
Blacknell policy to NES, the escrow company utilized by the Receiver and at the
Court's direction, NES placed the monies in a segregated account.

Mohnkern filed this litigation on March 8, 2002, in the Middle District of
Florida and it was subsequently transferred to [the Northern District of Ohio] on
April 19, 2002. Following unsuccessful settlement discussions, this Court stayed the
case *sub judice*, until Mohnkern intervened in the *Liberte* action regarding her
contractual rights. Subsequent to a fairness hearing on the method of distribution
regarding the Alpha investors, Mohnkern's motion for release and distribution of the
Blacknell proceeds was dismissed. On Appeal, the Sixth Circuit reversed and
remanded "for a hearing as to the ownership of the Blacknell Policy proceeds,
consistent with Mohnkern's due process rights." *Liberte Capital Group, LLC v.
Capwill*, 421 F.3d 377, 385 (6th Cir. 2005).

After remand, in December 2005, Mohnkern and the Receiver resolved the
contractual dispute and Mohnkern received $105,000 in return for settlement of her
contractual claim. Upon notification of that settlement, the Court lifted the stay in
the present lawsuit. Mohnkern sets forth four causes of action in her amended
complaint as follows: (1) that Defendant's failure or delay in payment was a
violation of Florida statute §§ 624.155 and 627.421; (2) that Defendant acted
unreasonably and in violation of Plaintiff's statutory rights; (3) that Defendant has
an absolute statutory obligation to pay her [attorneys'] fees and interest in
accordance with Florida law; and (4) declaratory relief in regards to Plaintiff's
entitlement to [attorneys'] fees and interest under Florida law.

The district court went on to hold that the principal inquiry was whether Mohnkern was due
attorneys' fees under Florida statute § 627.421. The lower court held that "taking into consideration
PIC's action and responses to the Receiver and Court order, to award attorneys' fees . . ., in this
instance, would be to penalize an insurer when it was without power to resolve the conflict and
would be contrary to the intent of the statute."

## II.

This Court reviews *de novo* a district court's grant of summary judgment. *Hardesty v.
Hamburg Twp.*, 461 F.3d 646, 650 (6th Cir. 2006). Summary judgment is proper where no genuine
issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED.
R. CIV. P. 56(c). In considering a motion for summary judgment, the district court must construe
all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith
Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a
sufficient disagreement to require submission to a jury or whether it is so one-sided that one party
must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

1. *Attorneys' Fees*

Mohnkern argues that because she was forced to litigate in order to receive payment under the Blacknell policy, the statute is automatically triggered, and PIC must pay her attorneys' fees under the statute. PIC argues that in order for attorneys' fees to be awarded under § 627.428, the insurer must wrongly deny paying a benefit, causing the insured to resort to litigation. Here, it was the Receiver's action and the resulting court order that halted PIC from paying the proceeds of the Blacknell policy to Mohnkern. According to PIC, it never denied the benefit and was without power to resolve Mohnkern's claim.

The Florida statute at issue reads in relevant part that "[u]pon rendition of a judgment . . . against an insurer and in favor of any . . . named beneficiary under a policy, the trial court . . . shall adjudge . . . in favor of the . . . beneficiary a reasonable sum as fees or compensation for the . . . Beneficiary's attorney . . . ." FLA. STAT. § 627.428. Florida courts have held that a settlement "is the functional equivalent of . . . a verdict in favor of the insured." *Wollard v. Lloyd's & Cos. Of Lloyds*, 439 So. 2d 217, 218-19 (Fla. 1983). And, as the Eleventh Circuit has recognized, an insured may recover attorneys' fees under § 627.428 when reaching a settlement. *See United States v. Pepper's Steel & Alloys, Inc.*, 289 F.3d 741, 742 (11th Cir. 2002).

The issue we must decide is simple: does the Florida statute automatically award attorneys' fees upon a successful outcome by the beneficiary/insured? Or does the statute require the insurer to have wrongfully caused the insured/beneficiary to resort to litigation before attorneys' fees can be awarded?

The purpose behind § 627.428 is to place the insured or beneficiary in the place she would have been if the carrier had seasonably paid the claim or benefits without causing the payee to engage counsel and incur attorneys' fees. As the Florida Supreme Court said in *Ins. Co. of N. Am. v. Lexow*, 602 So. 2d 528, 531 (Fla.1992):

> Florida courts have consistently held that the purpose of section 627.428 and its predecessor is to discourage the contesting of valid claims against insurance companies and to reimburse successful insureds for their [attorneys'] fees when they are compelled to defend or sue to enforce their insurance contracts. *Clay v. Prudential Ins. Co. of America*, 617 So. 2d 433, 436 (Fla. App. Ct. 1993).

The district court correctly relied on *Government Employees Ins. Co. (GEICO) v. Battaglia*, 503 So. 2d 358, 360 (Fla. 1987).[2] The *Battaglia* court held that GEICO could not be penalized for

---

[2] As the district court accurately pointed out, Florida courts have denied attorneys' fees in numerous situations where an insured/beneficiary was ultimately successful in litigating against an insurance company:

> [Attorneys'] fees have . . . been denied in instances where the initial denial of claim was based upon erroneous information provided by the insured. *Liberty National Life Ins. Co. v. Bailey*, 944 So. 2d 1028, 1030 (Fla. 2006) (rejecting imposition of strict liability under 627.428 where a valid claim is not submitted). Where the insurer had paid over $1 million dollars in claims, was in the process of adjusting remaining claims and delays in payments were due to insured's failure to provide timely information with supporting documentation, the insured was not entitled to [attorneys'] fees absent of showing of incorrectly denied benefits. *Tristar Lodging v. Arch Specialty Insurance Co.*, 434 F. Supp. 2d 1286, 1300 (M.D. Fla. 2006) (noting difference between existence of a bona fide dispute and mere possibility of a dispute as crucial in determining whether payments by insured are treated as confessions of judgment), *aff'd*, Case No. 06-13989 (11th Cir. Jan. 26, 2007). Additionally, [attorneys'] fees have been denied where the insurer could not reasonably be expected to resolve factual and legal issues and the conflict was forced into court. *Crotts v. Bankers and Shippers Ins. Co. of New York*, 476 So. 2d 1357, 1359 (Fla. 1985) (factual issue involved conflicting claims to insurance proceeds and legal questions revolved around applicability of Florida statute which exempted disability payments from legal process). *See also Time Ins. Co. v. Arnold*, 319 So. 2d 638, 639 (Fla.

a trial court's order staying arbitration that had the effect of delaying the payment of Battaglia's claim, and causing Battaglia to resort to litigation. The Florida court stated that "[t]he purpose of section 627.428 is to penalize a carrier for wrongfully causing its insured to resort to litigation to resolve a conflict when it was reasonably within the carrier's power to do so. When the claim is one that the carrier reasonably can expect to be resolved by a court, rather than by itself, then section 627.428 does not generate a punitive fee." 503 So. 2d at 360 (internal citations omitted).

The facts show that Mohnkern was compelled to sue to enforce her rights under the Blacknell policy, thereby fitting within the language of the statute. However, PIC did not contest her valid claim, nor did it ever truly deny her claim. PIC acted pursuant to a court order when it paid the Blacknell proceeds into the Receiver's escrow account instead of to Mohnkern. PIC never wrongfully caused Mohnkern to resort to litigation, rather PIC was forced to abide by the district court's order. If PIC had refused to follow the district court's order and paid Mohnkern instead of the receiver, it would have risked being held in contempt by the district court. It was the Receiver and the district court which compelled Mohnkern to intervene in the *Liberte* action to assert her contractual rights under the Blacknell policy. And under *Battaglia*, because PIC was without power to resolve Mohnkern's claim in the face of the district court's order, § 627.428 does not apply. *Id.* Accordingly, we AFFIRM the district court's grant of PIC's motion for summary judgment.

## 2. *Statutory Interest*

Mohnkern also argues the district court erred in denying her claim for interest under Florida Statute § 627.4615. Even though Mohnkern raised it in her motion for summary judgment, the district court did not address her claim for interest in its order granting PIC summary judgment.

Mohnkern argues that under § 627.4615,[3] where a beneficiary is ultimately determined to be entitled to insurance policy proceeds, the insurance carrier is statutorily liable for interest from the date the insurer receives written due proof of the death of the insured persons. Here, Mohnkern argues she was entitled to interest from November 2, 2001, through the date she received her settlement on December 5, 2005, a period of four years and one month. According to the statute, she was entitled to an annual interest rate of at least 8 percent.

PIC argues that it paid the proceeds of the Blacknell policy, along with the applicable interest under § 627.4615, to the Receiver. Those funds were kept in a segregated interest-bearing account by the escrow agent. Yet, as PIC points out, Mohnkern received $105,000 in her settlement with the receiver, which apparently represents only $5,000 in interest. PIC states that it paid over $8,600 in interest to the Receiver, not including the interest garnered in the interest-bearing account. According to PIC, because it paid the applicable interest under the statute, it is not liable for additional interest simply because Mohnkern was not able to recover more money from the Receiver.

---

1975); *Equitable Life Assurance Soc'y of U.S. v. Nichols*,, 84 So. 2d 500, 502 (Fla. 1956) (under predecessor statute no [attorneys'] fees absent wrongful conduct by insurer).

[3]Section 627.4615 Fla. Stat. (2005) provides as follows:
Interest payable on death claim payments:
> When a policy provides for payment of its proceeds in a lump sum upon the death of the insured, the payment must include interest, at an annual rate equal to or greater than the Moody's Corporate Bond Yield Average-Monthly Average Corporate as of the day the claim was received, from the date the insurer receives written due proof of death of the insured. If the method of calculating such index is substantially changed from the method of calculation in use on January 1, 1993, the rate must not be less than 8 percent.

We find that PIC's argument has the most merit. It paid the policy proceeds plus statutory interest to the Receiver pursuant to a valid court order. It is not clear what else PIC could have done. To compel them to pay interest again would be penalizing them for following a court order, and making them pay double interest on the death benefit. Mohnkern cites no cases, and we do not find any, that would require PIC to pay interest after it abided by a court order and paid the benefit plus interest to the Receiver. All of the cases relied on by Mohnkern involve the denial and non-payment of a death benefit. Here, the benefit was paid, just not to Mohnkern. The fact that Mohnkern was then unable to recoup all of the interest paid by PIC was not due to any wrongful denial of benefit by PIC. Accordingly, the district court's denial of Mohnkern's claim for interest under § 627.4615 is AFFIRMED.

## III.

Based on the foregoing, we AFFIRM the district court's denial of Mohnkern's motion for partial summary judgment and grant of PIC's motion for summary judgment.

---

**DISSENT**

---

ALICE M. BATCHELDER, Circuit Judge, dissenting. I respectfully dissent from the majority's decision to deny Janet Mohnkern attorney's fees under Fla. Stat. § 627.428. As the majority recognizes, (Maj. Op. at 6, 8), Mohnkern satisfies the only requirements for such recovery as set forth by the plain text of § 627.428(1): She was the assignee–beneficiary of a life insurance policy, she was compelled to sue to enforce her rights, and the litigation resulted in a determination that she was entitled to the policy proceeds. Because § 627.428 is applicable to this case, and because the district court that ordered PIC to pay NES instead of Mohnkern was without authority to resolve the issue, Mohnkern is entitled to attorney's fees.

As the Supreme Court of Florida has recognized, "[i]f the dispute is within the scope of [§] 627.428 and the insurer loses, the insurer is *always* obligated for attorney's fees." *Ins. Co. of N. Am. v. Lexow*, 602 So. 2d 528, 531 (Fla. 1992) (emphasis added). In determining whether a dispute comes within the scope of § 627.428, Florida courts look to the purpose of the statute, which is "to discourage the contesting of valid claims against insurance companies and to reimburse successful insureds for their attorney's fees when they are compelled to defend or sue to enforce their insurance contracts." *Id.* at 531. Thus, the statute serves two general purposes: to deter insurers from taking actions that compel insureds into litigation (by punishing those that do), and to compensate the insureds when they are so compelled.

Examining the current case under this rubric, it is clear that the compensatory purpose of § 627.428 is applicable. As the majority acknowledges, "Mohnkern was compelled to sue to enforce her rights under the Blacknell policy." Maj. Op. at 6. As a result, at the time of settlement Mohnkern had paid $56,147 in attorney's fees and litigation costs to recover the $100,000 on the policy for which she had initially paid $49,995.

As to the deterrent or punitive purpose, a brief review of PIC's actions is helpful. PIC informed Mohnkern on January 3, 2002, that it was ready to pay her the Blacknell Policy proceeds, and that such payment would take place upon resolution of an unrelated collateral matter.[1] The following day, Lynn Day from NES emailed Scott Holman at PIC; Day was trying to "wrap [Mohnkern's] file up," and wanted to know if PIC had decided to pay Mohnkern the policy proceeds. Within ten minutes, Holman replied that based on the collateral assignment, PIC had authorized payment to Mohnkern. Holman went on to say, "[i]f you believe this decision is incorrect please let me know as soon as possible." This solicitation of advice was entirely unprompted, as Day had made clear that she was asking for an update only for the purpose of wrapping up Mohnkern's file, not to weigh in on the issue. Nonetheless, a few hours later, Day replied that it was the federal court-appointed Receiver's position that "the court must okay the payment of this benefit," and that the Receiver was "putting a motion before the court today for direction." PIC agreed to await action by the Receiver and the district court. This led to the court order, which then led to PIC's paying the policy proceeds to NES, not Mohnkern.

I think it is clear that the punitive or deterrent purpose of § 627.428 is well served on these facts. Despite having determined that Mohnkern was entitled to the proceeds, PIC chose to involve NES and the Receiver in the process instead of paying Mohnkern the proceeds as required under the insurance contract, with the result that Mohnkern was forced to initiate this litigation. Accordingly,

---

[1]The collateral matter was the question of whether PIC should refund to NES or Mohnkern premium payments that had been made after Blacknell's death.

this case is within the scope of § 627.428, and, because Mohnkern prevailed, PIC is obligated for attorney's fees. *See Lexow*, 602 So. 2d at 531 ("If the dispute is within the scope of [§] 627.428 and the insurer loses, the insurer is *always* obligated for attorney's fees.").

The cases relied on by the majority do not undermine this conclusion. They merely prove that § 627.428 does not award attorney's fees to *every* insured-beneficiary who ultimately prevails in litigation, a point that I am willing to concede. But that is not determinative of whether Mohnkern is entitled to attorney's fees under § 627.428 based on the facts and circumstances of *this* case. My reading of the Florida case law, including all of the cases cited in the majority opinion, indicates that § 627.428 does not award attorney's fees to a victorious insured-beneficiary only where the insurer did not wrongfully deny benefits, and that the Florida courts have applied this exception to § 627.428's awarding of fees only in two distinct factual settings, neither one of which applies to this case.

First, the Florida courts have found that the insurer did not wrongfully deny benefits where, at the time the insurer was alleged to have denied benefits, it was under no obligation to pay. For example, in *Liberty National Life Ins. Co. v. Bailey*, 944 So. 2d 1028 (Fla. Dist. Ct. App. 2006), which the majority cites at Maj. Op. at 5 n.2, the insured submitted a claim form and treating physician's statement that erroneously reflected her illness as predating her policy, which caused the insurer to deny her claim. When the insured brought suit before attempting to correct or explain the errors in her submissions, she was not entitled to attorney's fees under § 627.428, because "upon receipt of [the insured]'s initial claim, [the insurer] had no obligation to pay." 944 So. 2d at 1030; *see also Time Ins. Co. v. Arnold*, 319 So. 2d 638 (Fla. Dist. Ct. App. 1975) (same general fact pattern as *Bailey* and cited by the majority at Maj. Op. at 8 n.2). Additionally, in *Tristar Lodging, Inc. v. Arch Speciality Ins. Co.*, 434 F. Supp. 2d 1286 (M.D. Fla. 2006), cited by the majority at Maj. Op. at 5 n.2, at the time the insured filed suit, the insurer had already paid a number of claims and was in the process of adjusting the remaining claims. The court declined to award attorney's fees because there was no indication of when the remaining claims were due and payable, and therefore, it was impossible to say that the insurer had failed to pay timely. With no breach of a duty to pay, benefits were not wrongfully denied or withheld, and attorney's fees were not appropriate. 434 F. Supp. 2d at 1294-1301.

Clearly, PIC is not helped by this line of cases, and the majority is mistaken to conclude otherwise. There is no dispute that, at the time PIC paid NES the Blacknell Policy proceeds, PIC was under a contractual obligation to pay Mohnkern those proceeds. Mohnkern submitted all of the necessary paperwork to claim her benefits, and PIC informed Mohnkern that it had approved her receipt of the benefits. Furthermore, as I will explain below, PIC was not relieved of this obligation by the district court's order instructing it to pay NES.

The majority similarly errs in its reliance on *Government Employees Ins. Co. (GEICO) v. Battaglia*, 503 So. 2d 358 (Fla. Dist. Ct. App. 1987), which falls squarely within the no-duty-to-pay line of cases. In *Battaglia*, the insured, who had uninsured motorist coverage through GEICO, was injured in a collision with the tortfeasor, who had liability coverage through Florida Farm Bureau ("FFB"). The insured filed an action against the tortfeasor and FFB. After one year of litigation, the tortfeasor disappeared and refused to cooperate, causing FFB to deny coverage on the basis that its defense had been prejudiced by the tortfeasor's actions. After this denial, the insured sought arbitration on its uninsured motorist policy. With no opposition from GEICO, arbitration was granted. But prior to the final hearing date, GEICO located the tortfeasor, who was then deposed by counsel for all interested parties — GEICO, FFB, and the insured. FFB reinstated coverage for the accident, and, as a result, GEICO moved for a stay of arbitration and initiated a declaratory judgment action seeking a determination that it was not liable for the uninsured motorist coverage due to the availability of FFB's coverage. The court granted a stay of arbitration but dismissed both sides' motions for summary judgment in the declaratory judgment action. Thereafter, the tortfeasor

again disappeared, once again causing FFB to deny coverage based on the tortfeasor's lack of cooperation. After this denial of coverage by FFB, the insured filed a motion for summary judgment in the declaratory judgment action seeking a determination that he was entitled to the uninsured motorist coverage from GEICO. The court entered summary judgment to that effect, and also granted insured attorney's fees under § 627.428.

The Florida district court of appeals reversed the attorney's fees determination, finding that GEICO never wrongfully denied coverage. The court reasoned:

> At the times FFB was affording coverage, GEICO was not obligated to do so. From [the time the trial court stayed the arbitration after FFB's reinstatement of coverage], until FFB again denied coverage [after tortfeasor disappeared for the final time], there was no coverage obligation on the part of GEICO. It was eminently reasonable for GEICO to seek resolution of that fact by declaratory judgment and to obtain a stay of arbitration during that period. Given the last coverage denial by FFB . . . GEICO did not deny coverage or reject arbitration. It did resist the imposition of attorney fees against it, which it had every right to do.

503 So. 2d at 360-361. In other words, because the insured had only *uninsured* motorist coverage through GEICO, GEICO was obligated to pay on that policy only if FFB denied coverage. After FFB reinstated coverage, GEICO was not obligated to the insured for any coverage and it was therefore not a wrongful denial of coverage to seek a declaratory judgment to that effect and a stay of arbitration on that basis. Clearly, as with *Bailey* and *Tristar*, the rationale of *Battaglia* in denying attorney's fees was that the insurer did not wrongfully deny benefits to the insured because, during the time in question, the insurer was under no duty to pay the insured. Thus, for the same reasons *Bailey* and *Tristar* are inapplicable to the current case, so is *Battaglia*.

The second factual setting in which the Florida courts have found no wrongful denial of coverage is where the insurer does "not deny liability but simply bec[o]me[s] involved in a dispute over which of two claimants [i]s entitled to the benefits of the policy," and a court conclusively decides the issue. *Lexow*, 602 So. 2d at 531 (citing *Manufacturers Life Insurance Co. v. Cave*, 295 So. 2d 103 (Fla. 1974); *Equitable Life Assurance Society v. Nichols*, 84 So. 2d 500 (Fla. 1956)); *see also Manufacturers Life Insurance Co. v. Cave*, 295 So. 2d 103 (Fla. 1974); *Crotts v. Bankers & Shippers Ins. Co.*, 476 So. 2d 1357 (Fla. Dist. Ct. App. 1985). Among these cases, the majority relies on *Nichols* and *Crotts*. Maj. Op. at 5–6 n.2. In *Nichols*, the insured, prior to his death, changed the beneficiary of his life insurance policy from his surviving spouse, Walsh, to Nichols. After the insured's death, Walsh contested the change of beneficiary arguing that the decedent had been unduly influenced by Nichols. The insurer attempted to reach a settlement between the parties, but when this failed, both Walsh and Nichols filed suits at law to recover the policy proceeds. The insurance company filed a cross-bill of interpleader, which was dismissed because the court determined that consolidating the cases brought by Walsh and Nichols would suffice. The Supreme Court of Florida upheld the lower court's determination that Nichols was entitled to the benefits, but reversed its determination that Nichols was entitled to attorney's fees under a prior (and nearly identical) version of § 627.428.[2] The Court reasoned:

---

**2**Section 625.08, Fla.Stat.1953, F.S.A. provided that:

Upon the rendition of a judgment or decree by any of the courts of this state against any insurer in favor of the beneficiary under any policy or contract of insurance executed by such insurer, there shall be adjudged or decreed against such insurer, and in favor of the beneficiary named in said policy or contract of insurance, a reasonable sum as fees or compensation for his attorneys or solicitors prosecuting the suit in which the recovery is had.

The insurance company *admitted liability under the policy but declined to pay either claimant until the dispute between them had been settled, either by negotiation or judicial fiat*. The facts would have supported a bill for interpleader, had one been timely filed, and thus there was no "wrongful" refusal to pay the proceeds of the policy to the appellee Nichols.

84 So. 2d at 502 (emphasis added).

Likewise, in *Crotts v. Bankers & Shippers Ins. Co.*, the insured was injured in a motorcycle accident and transported to a hospital, where, upon his arrival, he signed an assignment to the hospital of "the insurance hospital benefits due me . . . ." He signed a second, identical form when he was readmitted. Two months later, the insured, through counsel, requested that his entire no-fault insurance benefits be paid to him as disability benefits, rather than medical benefits, and the insurer commenced biweekly disability payments to him. Approximately eight months later, the insured requested that he be paid the entire remaining $5,920 balance of the policy because he was then considered permanently disabled. Before this lump sum payment was made, the hospital informed insurer of its claim to the proceeds based on the assignments signed by the insured. The insured eventually sued the insurer to receive the proceeds, at which time the insurer filed a third-party complaint against the hospital for interpleader and declaratory relief. The hospital then filed a counterclaim against insured for unpaid hospital bills. The trial court granted summary judgment to the insured on his claim for the policy proceeds and to the hospital on its claim for unpaid bills. The court denied the insured attorney's fees. The Florida district court of appeals affirmed the denial of fees, reasoning that because the insurer was faced with competing claims to the policy proceeds that involved "factual and legal issues which the insurance company could not reasonably be expected to resolve on its own, the insurance company was not wrongful in withholding payment and forcing the conflict into court." 476 So. 2d at 1359.

To determine whether *Nichols* and its progeny apply to the instant case, the nature of the district court's involvement in this case must be examined. The record reflects that Mohnkern's right to the proceeds of the insurance policy had entirely vested in her by virtue of an absolute assignment before there was any receivership estate, and neither PIC nor Mohnkern was a party to the action in which the district court issued its order instructing PIC to pay NES. As a result, the district court was without authority to adjudicate entitlement to the policy proceeds, or to order PIC to make such payment to NES. Indeed, an examination of receivership law confirms this point. It is "well settled" that a court "cannot by its order take property from the actual possession of a stranger to the action in which a receiver is appointed who claims title to it or right to its possession." 2 Clark on Receivers § 636 (3d ed. 1959).[3] Such an order violates due process, *Liberte Capital Group, LLC v. Capwill*, 421 F.3d 377 (6th Cir. 2005) (holding Mohnkern's due process rights violated), and is therefore void, 2 Clark on Receivers § 636. Indeed, for a receiver to obtain possession of property from a nonparty, such as the policy proceeds from PIC, the receiver:

---

[3] For example, in *Wheaton v. Daily Tel. Co.*, 124 Fed. 61 (2d Cir. 1903), an insolvent corporation involved in receivership was indebted to a bank. Where the bank was not a party to the receivership action, it was error to order the bank to pay the receiver the amount of corporate deposits with the bank, pending a determination of the bank's right to set off such deposits against the corporate debt. As the Wheaton court described, the bank was "entitled to their day in court, and the receiver must proceed by suit in the ordinary way to try his right to the property, or the plaintiff must bring them in as parties to the action, and apply to have the receivership extended to the property in their hands." 124 Fed. at *3. Some might mistakenly read this as inconsistent with *Horn v. Pere Marquette R. Co. et al.*, 151 Fed. 626 (Circ. Ct. E.D. Mich. 1907), where a receivership court's order to hand over all assets of a railroad company was found to apply to a bank that was not a party at the time of the order. However, the key in *Horn* was that the defendant bank "came in[to the action] and answered to the merits." 151 Fed. at 629. Thus, there is nothing inconsistent about *Horn* and the rule that a nonparty cannot be forced by summary proceeding to hand over property to the receivership estate.

> must either proceed by suit in the ordinary way to try his right to it, or the complainant or petitioner in the main suit should make such third person a party to the main suit and apply to have the receivership extended to the property in his hands so that an order for the delivery of the property may be made which will be binding, and which may be enforced by process of contempt if not obeyed.

2 Clark on Receivers § 628 (3d ed. 1959). Quite clearly, the single motion filed by the Receiver and the resulting court order were wholly insufficient to divest Mohnkern of her property interest in the proceeds and to compel a nonparty, PIC, to pay the proceeds to NES.

Because the district court was without authority to resolve the issue, PIC's payment to NES — and denial of payment to Mohnkern — occurred prior to any conclusive resolution of the issue of which party was entitled to the policy proceeds. This stands in stark contrast to *Nichols* and *Crotts*, where attorney's fees were denied because the insurer acknowledged its duty under the policy but withheld payment from the competing parties until their claims were conclusively resolved by the court. In *Nichols* and *Crotts*, the insurer forced the claims into court, allowing all parties the opportunity to present their claim to the proceeds and enabling the court's judgment on the matter to bind all parties. Here, PIC did not force the dispute into court, but instead simply paid NES and washed its hands of the matter. Because neither Mohnkern nor PIC was a party to the receivership case, neither had the opportunity to present any arguments to the district court, and the court's order on the issue did not bind either party.

The majority is also incorrect to rely on the language from decisions by intermediate Florida appellate courts that find the punitive purpose of § 627.428 inapplicable when "the claim is one that the [insurer] reasonably can expect to be resolved by a court, rather than by itself." Maj. Op. at 6 (citing *Battaglia*, 503 So. 2d at 360). The Supreme Court of Florida has rejected this argument, stating:

> We reject the argument that attorney's fees should not be assessed against [the insurer] because this dispute involved a type of claim which reasonably could be expected to be resolved by a court. [The insurer]'s good faith in bringing this suit is irrelevant. If the dispute is within the scope of section 627.428 and the insurer loses, the insurer is always obligated for attorney's fees.

*Lexow*, 602 So.2d at 531. PIC, therefore, cannot escape liability for attorney's fees by arguing that it was reasonable to allow a court to determine whether the policy was affected by the Receivership estate. And in any event, PIC could not rely on that ground here because, as I detailed above, PIC did not — nor did it attempt to — have the issue *properly* resolved by a court.

Accordingly, there is no basis for denial of Mohnkern attorney's fees under § 627.428. She meets all of the statutory requirements for recovery of those fees. The compensatory purpose of the statute is well served in this case because Mohnkern was forced to spend $56,147 in attorney's fees and litigation costs to recover the $100,000 on the policy for which she had initially paid $49,995. The punitive purpose of the statute is well served because PIC, despite having determined that Mohnkern was entitled to the proceeds, voluntarily and with virtually no advance notice to Mohnkern, breached its obligation under the policy by remitting the proceeds to a third-party that had no legal right to them. Furthermore, PIC should not be permitted to escape this liability based on the involvement of the district court, because the matter was never properly before the court. Finally, because there is no other basis under Florida law by which PIC can escape liability, I would reverse the district court and award Mohnkern attorney's fees under § 627.428.